# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| KRISTIE JOPLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:15-03204-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Kristie Joplin seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner's") denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had severe physical impairments of a fracture of the thoracic spine post-surgery, sciatica, lumbago, and a chronic hepatitis C infection, but she retained the residual functional capacity to perform work as a cashier, information clerk, and small products assembler.

After carefully reviewing the record and the parties' arguments, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Factual and Procedural Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her application on January 3, 2012.[1]  The Commissioner denied Plaintiff's application at the initial claim level, and Plaintiff appealed the denial to an ALJ.  The ALJ held a video hearing, and on January 16, 2014, issued his decision finding Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review on March 18, 2015, leaving the ALJ's decision as the Commissioner's final decision.  Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny SSI benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).  Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision.  *Id.*  In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).  The court must "defer heavily" to the Commissioner's findings and conclusions.  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The court may reverse the Commissioner's decision only if it falls outside of the available "zone of choice," and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact.  *Buckner*, 646 F.3d at 556.

---

[1] Plaintiff alleges she became disabled earlier, on January 15, 2007, but under Title XVI, a claimant may not receive benefits for any period prior to the filing of her application.  20 C.F.R. §§ 416.330, 416.335.

**Analysis**

The Commissioner follows a five-step sequential evaluation process[2] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff contends the ALJ committed reversible error by failing to: (1) find she possessed a severe mental impairment at step two; (2) find her disabled under Listing 5.08 for a digestive disorder at step three;[3] and (3) give her treating physician's opinion controlling weight. These arguments are without merit.

**I.      The ALJ did not err in finding Plaintiff did not suffer from a severe mental impairment.**

Plaintiff argues that substantial evidence does not support the ALJ's finding that she does not suffer from a severe mental impairment. The Court finds substantial evidence supports this finding.

In order to meet the step two "severity" requirement, Plaintiff had to show she had (1) a "medically determinable" impairment or combination of impairments which (2) significantly

---

[2] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 416.920(a)–(g). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

[3] The listings are sets of diagnostic criteria, which if met, will halt the sequential evaluation with a finding of disability at step three of the sequential evaluation process. 20 C.F.R § 416.920(a)(4)(iii). The claimant bears the burden of showing she meets each of the specific criteria in the listed impairment. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). "[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The medical criteria for listed impairments were intentionally set high because they end the inquiry relatively early in the sequential evaluation process. *Id.*

limits her physical or mental ability to perform basic work activities without regard to age, education, or work experience, for the required twelve-month duration. 20 C.F.R. §§ 416.920(c), 416.921(a) (2013); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Although severity is not an onerous requirement, it is also not a toothless standard. *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

The ALJ explicitly considered Plaintiff's mental health issues, but concluded her limitations were non-severe. The ALJ noted that Plaintiff's medical records documented very little mental health treatment, and that she testified that she was not taking medication or seeking mental health treatment at the time of the hearing. R. at 14, 661, 665-66, 677. The lack of medication and treatment was a valid basis for the ALJ to find her mental impairments were non-severe. *See Whitman v. Coleman*, 762 F.3d 701, 706 (8th Cir. 2014) (noting a lack of treatment may indicate a problem is not serious).

Further, using the "special technique" under the regulations, 20 C.F.R. § 416.920a(c)(3), (d)(1); 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00C, the ALJ found that Plaintiff's ability to function was only mildly limited, thus her mental impairments were non-severe, 20 C.F.R. § 416.920a(d)(1) (2015). As the ALJ noted, based on her descriptions of her daily activities, Plaintiff had no limitations in her daily living, social function, and persistence. R. at 14. While she complained of physical pain, she did not describe any mental difficulty in any of the foregoing three domains. *Id.* For instance, Plaintiff acknowledged being able to care for her two sons, including feeding and clothing them, and that she could also go shopping, pay bills, count change, handle bank accounts and a checkbook, and that she spent time with her family and others at home and at church. R. at 163-69. She also described being able to get along with

4

authority figures, and noted that she had never been fired from any job due to difficulty getting along with others. R. at 169.

Although Plaintiff cites treatment records from 2009 to 2011 which demonstrate she struggled with anxiety and depression before January 3, 2012, these records are not directly relevant to her application. Even assuming her depression and anxiety continued unabated into the relevant period, nothing in the record suggests depression and anxiety impacted her activities of daily living, social function, concentration, or her tendency to decompensate.

Hence, the ALJ did not err in finding she did not have a severe mental impairment.

## II. The ALJ did not err in finding Plaintiff is not disabled under Listing 5.08.

Plaintiff argues that the ALJ should have found her disabled under Listing 5.08 for weight loss in conjunction with a digestive disorder, namely liver dysfunction caused by her hepatitis C. The Court finds no error.

In order to meet Listing 5.08, Plaintiff must show that she had weight loss due to any digestive disorder, despite "continuing treatment as prescribed," and with two body mass index calculations (BMI),[4] at less than 17.5, calculated at least sixty days apart within a six-month period. 20 C.F.R. pt. 404, subpt. P, app. 1, § 5.08. Again, this six-month period must overlap with the period she was eligible for benefits.

Plaintiff did not meet the Listing. All of the evidence Plaintiff cites for low body weight was from 2011, before the period considered by the ALJ. Even if the ALJ considered Plaintiff's low weight in 2011, she would not meet the Listing because she refused to comply with her treating doctor's instructions. Plaintiff's compliance was so poor that her doctor dismissed her from his care on February 1, 2012, because she had not shown up for multiple lab tests and office

---

[4] The BMI formula is weight in pounds divided by height in inches multiplied by height in inches multiplied by 703. 20 C.F.R. pt. 404, subpt. P, app. 1, § 5.00G(b).

visits, despite the fact the doctor had repeatedly stressed the importance of the visits. R. at 280. Further, although Plaintiff remained thin into 2012, doctors noted that she tested positive for amphetamines, which could obviously contribute to her difficulty gaining weight. R. at 306, 327, 509, 551.

There is also no merit to Plaintiff's claim that the ALJ erred by failing to discuss whether she met or equaled Listing 5.08. As Plaintiff acknowledges in her brief, the ALJ is not required to discuss Listings in detail, and the ALJ's decision must be affirmed notwithstanding whether the ALJ discusses the Listing when the evidence shows the claimant does not meet it. *See Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an impairment does not [meet or] equal one of the listed impairments as long as the overall conclusion is supported by the record.").

Accordingly, the Court finds the ALJ's step three finding was supported by substantial evidence on the record.

### III.     The ALJ did not err in discounting Dr. Casey's opinion.

Finally, Plaintiff argues that the ALJ erred in not adopting the medical source statement form completed by one of her treating doctors, Dr. Rick Casey, D.O. ("Dr. Casey"). The Court holds the ALJ carefully considered Dr. Casey's opinion, and his decision rejecting it was well supported by substantial evidence.

The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R § 416.927(c)(2). In evaluating a medical opinion, the ALJ should consider the length, frequency, nature, and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization of the treating source, and other factors supporting or contradicting the opinion.

*Id.* "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011). If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

Here, the ALJ gave four good reasons for discounting Dr. Casey's medical source statement. First, the ALJ noted that Dr. Casey saw Plaintiff relatively infrequently. In fact, at the time he filled out the medical source statement, Dr. Casey had seen Plaintiff only three times. This is a valid reason to give his opinion less weight. *See Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (noting medical opinion issued after three visits was not a "treating source" opinion). Second, the ALJ noted the simple checklist format used by Dr. Casey was conclusory and did not explain his opinion, which was troubling given the extreme limitations the doctor found, particularly when compared to the mild findings in his few treatment notes. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (noting limited value of checklist format form "where the limitations listed on the form stand alone, and were never mentioned in the physician's numerous records o[f] treatment nor supported by any objective testing or reasoning"). Third, the ALJ noted the doctor's proposed limitations were "inconsistent with the objective medical evidence," including Plaintiff's back surgery notes from several years before Dr. Casey saw her. R. at 17, 196-210. Fourth, the ALJ observed that Dr. Casey's opinion relied on Plaintiff's subjective complaints, and the ALJ explicitly found Plaintiff was not credible,[5] a finding Plaintiff does not contest.

---

[5] The ALJ found Plaintiff's statements concerning the limiting effects of her symptoms were not credible because: (1) they were inconsistent with her activities of daily living; (2) her sporadic work history prior to the alleged disability onset date raised a question whether her continued unemployment was due to her medical impairments; (3) her treatment noncompliance and drug-seeking behavior, which even Dr. Casey acknowledged, suggested she

Because the ALJ gave good reasons for discounting Dr. Casey's opinion, there was no error.

**Conclusion**

Substantial evidence on the record supports the Commissioner's decision, and so the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     September 12, 2016               /s/ Greg Kays
                                           GREG KAYS, CHIEF JUDGE
                                           UNITED STATES DISTRICT COURT

---

was not disabled; (4) her denials that she was using illegal drugs or taken prescription medication not prescribed for her were demonstratively false as evidenced by various drug screens; and (5) her statements were inconsistent with the objective medical evidence. R. at 17-19.